UNITED STATES of America, Plaintiff–Appellee,

v.

Coy Ray PHELPS, Defendant–Appellant.

Nos. 99–10042, 01–10119.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2001.

Filed March 21, 2002.

George C. Boisseau and Manton Selby, Santa Rosa, CA, for the appellant.

Laurie Kloster Gray, Assistant United States Attorney, San Francisco, CA, for the appellee.

Before: HUG, D.W. NELSON, and HAWKINS, Circuit Judges.

HUG, Circuit Judge.

Phelps, who was found not guilty of various criminal offenses only by reason of insanity, was conditionally released with specific conditions to be monitored by the probation office. Phelps contends that the release proceedings did not comply with the requirements of 18 U.S.C. § 4243(f), that the conditions imposed on his release were in excess of those authorized by the statute, and that his release should have been unconditional. We conclude that the release conditions imposed by the court were not in excess of those authorized by the statute, but that the failure of the release proceedings to comply with § 4243(f) requires that the release order be vacated and Phelps be rehospitalized until such time as release proceedings are instituted and conducted in accordance with § 4243(f).[1]

## I.

### Factual & Procedural Background.

In 1986, a jury found Coy Ray Phelps "not guilty only by reason of insanity" of charges stemming from his possession, manufacture, and placement of pipe bombs at various locations in San Francisco. *Phelps v. United States*, 831 F.2d 897, 897 (9th Cir.1987).[2] Following the jury's verdict, the district court conducted a commit-

---

1. Phelps has had previous appeals before us, which include *United States v. Phelps*, 35 F.3d 573 (9th Cir.1994) (unpublished memorandum disposition) (rejecting Phelps' argument that 18 U.S.C. § 4243 is unconstitutional under the Supreme Court's decision in *Foucha v. Louisiana*, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992)); *United States v. Phelps*, 955 F.2d 1258 (9th Cir.1992) (affirming the district court's denial of Phelps' request for

conditional release); and *Phelps v. United States*, 831 F.2d 897 (9th Cir.1987) (rejecting Phelps' claim that 18 U.S.C. §§ 4243 and 4247 are unconstitutionally vague and overbroad).

2. "Phelps was charged with violating 28 U.S.C. § 5861(f), 26 U.S.C. § 5861(d), and 18 U.S.C. § 844(f) and (i). The bombs were placed at the Black Studies Department of

ment hearing pursuant to 18 U.S.C. §§ 4243 and 4247. At that hearing, "[t]he judge found that Phelps was suffering from a severe mental disease, and that there was clear and convincing evidence that Phelps' release 'would create a substantial risk of bodily injury to persons and serious damage to property of others due to that disease.'" *Id.* at 897–98 (quoting 18 U.S.C. § 4243(d)). Given this finding, the district court, under 18 U.S.C. § 4243(e), committed Phelps to the U.S. Medical Center for Federal Prisoners at Springfield, Missouri. *Id.*

Following Phelps' commitment, the district court received annual reports documenting Phelps' mental condition. In 1989, the warden for the Springfield facility sent a letter to the court stating that in the opinion of his staff, Phelps could be conditionally released. The government opposed this conditional release and moved the court for a hearing pursuant to 18 U.S.C. § 4243(f). *United States v. Phelps,* 955 F.2d 1258, 1261 (9th Cir.1992). Testimony was taken at the hearing and the district court denied the conditional release, which was affirmed on appeal. *Id.* at 1260–61. The district court continued to receive annual reports documenting Phelps' mental condition. In 1996, a letter to the court from Sally C. Johnson, M.D., the Associate Warden, Health Services, at the Federal Correctional Institution in Butner, North Carolina (Butner FCI), to which Phelps had been transferred in 1994, attached the joint report of Mark Hazelrigg, Ph.D., the clinical psychologist, and Jean Zula, M.D., the staff psychiatrist. That report stated that Phelps remained in need of inpatient hospitalization. The report noted that "[s]ome of his beliefs continue to be so extreme as to appear delusional and he remains impaired in his so-

cial relationships. . . . At this point, he has not improved sufficiently to be safely placed in the community." In 1997, Dr. Johnson forwarded "our Annual Forensic Update completed on Mr. Phelps." The letter stated "Mark Hazelrigg, Ph.D., Clinical Psychologist, Mr. Phelps' primary therapist, has outlined his recommendations concerning the need for continued placement in an inpatient psychiatric facility in the attached report." The report, which was again signed by Dr. Hazelrigg and Dr. Zula, stated that "Mr. Phelps is no longer in need of inpatient hospitalization . . . . The treatment team is currently beginning to develop a conditional release plan for Mr. Phelps to return to the community on an outpatient basis. When the plan is completed it will be submitted for review by the Probation Officer and then the court." It is significant that Dr. Johnson, the Associate Warden, did not endorse the report, but merely forwarded it on to the court.

On the basis of that report, the district court ordered a status hearing and requested an additional update from the Butner FCI. Dr. Johnson forwarded a report signed by Dr. Zula on August 18, 1998. In her cover letter she stated "it is our opinion at this time that he could comply with conditional release provisions and respect the authority of the court and the probation officer. His assigned case manager has contacted a probation officer in the San Francisco area for assistance in finding housing. No plan has been accomplished as of this date." (Emphasis added.) This time Dr. Johnson's letter did endorse the opinion of Dr. Zula, the staff psychiatrist. Dr. Zula's report stated that the staff viewed Phelps as having (1) schizophrenia, paranoid type, by history, in remission; (2) pedophilia, by history; (3)

San Francisco State University, a synagogue, a synagogue school, the house of a rabbi, and the Humanist Party Office." *United States v.*

*Phelps,* 955 F.2d 1258, 1260 n. 1 (9th Cir. 1992).

antisocial personality disorder; and (4) schizoid personality disorder. The report further stated that "Mr. Phelps is no longer in need of inpatient hospitalization .... It is our opinion at this time that Mr. Phelps could comply with conditional release provisions and respect the authority of the Court and probation officer. His assigned case manager has contacted a probation officer in the San Francisco area for assistance in finding appropriate housing. No plan has been accomplished as of this date." (Emphasis added.) It is important to note that both Dr. Johnson's letter and the enclosed report included the advice that Phelps could "respect the authority of the Court and probation officer."

The scheduled hearing was held on August 31, 1998. At the hearing, Phelps, his attorney, the Assistant U.S. Attorney, and the probation officer were present. The court noted at the outset that the probation officer had asked for additional time to work out a plan for Phelps' release so that there would be appropriate conditions and a place to live. Phelps' attorney objected to the delay, but it was clear that he was relying upon the report from the correctional institution recommending conditional release upon the development of an appropriate plan. Throughout the discussion at the hearing, there was no indication by anyone that Phelps could be released without appropriate conditions and living arrangements. The discussion centered principally upon finding an appropriate living place.

Following a status hearing on possible living arrangements for Phelps upon discharge, the district court granted Phelps a conditional release. Pursuant to the court's discharge order, Phelps was to live at Pine Home, a mental health board and care home in Lodi, California. In addition, the court set conditions of release designed to (1) ensure Phelps' participation in outpatient mental health care, (2) guarantee supervision of Phelps' activities, and (3) minimize the potential threat to public safety posed by Phelps' discharge.[3] Almost immediately after receiving this conditional discharge, Phelps filed a notice of appeal challenging the terms of his release and the process that the district court followed in granting the release.

Subsequent to the filing of Phelps' appeal, the district court entered three orders modifying its original conditional release. The last of these orders, entered on January 30, 2001, lifted the prior search and travel restrictions, but required Phelps to obtain the approval of a probation officer for any changes in employment or living conditions. In addition, the court prohibited Phelps from associating with known felons except in connection with his employment. On February 5, 2001, Phelps filed a second notice of appeal challenging this modification of his release.[4]

Phelps' two appeals have been consolidated into this single matter in which he raises four issues.

---

3. The medical conditions included mandatory participation in a treatment plan formulated by the probation officer and a prohibition on the use of medication for non-emergency purposes. The supervisory conditions required Phelps to consent to warrantless searches, placed limits on his ability to travel, and granted the probation officer access to monitor Phelps' medical treatment and financial activities. Finally, the public safety conditions placed restrictions on Phelps' possession of firearms and destructive devices, prohibit-

ed his use of alcohol and drugs, required Phelps to obtain pre-approval for contact with minors, and directed Phelps to notify third parties of the potential risk posed by his mental illness.

4. Phelps does not challenge the two earlier modification orders of June 22, 1999 and October 7, 1999, except to the extent that he challenges the district court's authority to place any conditions on his release.

1. Whether his release pursuant to 18 U.S.C. § 4243(f) was an unconditional discharge by operation of law and therefore the district court was without authority to impose conditions on release.

2. Whether the district court had authority to impose conditions on Phelps' release pursuant to 18 U.S.C. § 4243(f) that were not related to a prescribed regimen of medical, psychiatric, or psychological care or treatment.

3. Whether the district court had authority to impose conditions of Phelps' release pursuant to 18 U.S.C. § 4243(f) that were not certified as appropriate by the director of the facility in which Phelps had been previously committed.

4. Whether the conditions of release that were not related to a prescribed regimen of medical, psychiatric, or psychological care or treatment were reasonably related to Phelps' conditional discharge as an insanity acquittee under 18 U.S.C. § 4243(f).

■ The district court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.[5]

## II.

### Analysis.

### A. Procedure for Release.

The provisions of 18 U.S.C. § 4243 govern the hospitalization and release of a

**5.** Neither party raised the issue of whether the appeal of the first release order divested the district court of jurisdiction to modify the conditions of release while that order was on appeal. If it did, that would mean that we lack appellate jurisdiction to consider the modifications to the order entered January 30, 2001, in appellate case number 01–10119. We are obligated to consider jurisdictional questions regardless of whether they are raised by the parties. See *United States v. Smith*, 991 F.2d 1468, 1470 (9th Cir.1993).

The general rule is that once a notice of appeal has been filed the district court is divested of jurisdiction over the matters being appealed. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). This is a judge-made rule and the principle of divestiture is not absolute; there are exceptions. *Natural Res. Def. Council v. Southwest Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir.2001). The purpose of the rule is to promote judicial economy and avoid the confusion of having the same issues before two courts simultaneously. *Id.*

In this case the statute that governs the conditional release of a mentally ill person who has been acquitted of an offense only by reason of insanity provides for monitoring for public safety by the court. The court sets the initial conditions, but may at any time, after an appropriate hearing, modify those conditions. 18 U.S.C.

§ 4243(f). The original conditions for release were set forth in the order under appeal in case number 99–10042. That appeal concerns the enforceability of those conditions.

By the very nature of conditions for release of a mentally ill person in this circumstance, some fluidity is required, and is desirable, in order to achieve the objectives of the statutory requirements. This is not equivalent to the normal final judgment in a civil action; it is more akin to the process followed with regard to the appeal of temporary and permanent injunctions. See *Natural Res.*, 242 F.3d at 1166.

If new conditions of release are prescribed in a subsequent order, these can be addressed in a subsequent appeal, as was done in this case. If some of the conditions of the original order are removed by the district court prior to the appeal being heard, those issues simply become moot on appeal. The fact that an appeal of a release order does not divest the trial court of all jurisdiction to continue to monitor the release conditions does not frustrate the purpose of divestiture rule, because the same issues are not before two different courts simultaneously. Thus, the district court was not divested of jurisdiction to continue to monitor the release conditions in this case and we have appellate jurisdiction of case number 99–10042 as well as case number 01–10119.

person who is found not guilty only by reason of insanity at the time of the offense charged. After the judgment is rendered, the defendant is committed to a suitable facility until such time as he is eligible for release. He is entitled to a hearing within 40 days following the special verdict. Prior to the hearing the court is to order a psychiatric or psychological examination of the defendant with a report to be filed with the court. At the time of the hearing the person found not guilty only by reason of insanity has the burden of proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect. If that person fails to carry his burden of proof the person is hospitalized for treatment in a suitable facility.

The institution is to provide annual reports to the court on the mental condition of the person hospitalized. Section 4243(f) provides the procedure for determining whether that person can safely be released or conditionally released from the hospital.[6]

Generally that section provides that when the director of the hospital facility determines that the person has recovered from his mental disease or defect sufficiently to be released, or conditionally released, under a regimen of medical and psychiatric treatment such that he would not create a substantial risk of bodily injury or property damage to another, the director shall promptly file a certificate to that effect with the court. The court shall then order the discharge of the person unless, on motion of the Government or on its own motion, it holds a hearing. If, after the hearing, the court finds that the person has carried his burden of proof that he has sufficiently recovered to be released or conditionally released then the court shall order his release or conditional release.

■ The issue before the court on August 31, 1998, was whether Phelps could be conditionally released. The pertinent part of § 4243(f) relating to conditional release provides:

If, after the hearing, the court finds by the standard specified in subsection (d)[7] that the person has recovered from his mental disease or defect to such an extent that—

. . .

(2) his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall—

(A) order that he be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, that has been certified to the court as appropriate by the director of the facility in which he is committed, and that has been found by the court to be appropriate; and

(B) order, as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment.

The court at any time may, after a hearing employing the same criteria, modify

---

**6.** Section 4243(f) is attached in its entirety at Appendix A.

**7.** Subsection (d) of § 4243 provides in relevant part that the person found not guilty only by reason of insanity "has the burden of prov-

ing by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect."

or eliminate the regimen of medical, psychiatric, or psychological care or treatment. (Emphasis added.)

With regard to Phelps' argument that under the provisions of § 4243 his release was an unconditional discharge by operation of law, there are two serious flaws. First, the director of the Butner FCI did not file a certificate concerning Phelps' mental condition or his risk to society. The 1997 letter, upon which Phelps relies, was simply a cover letter from the associate warden enclosing the annual report of the staff. The letter did not even state that the associate warden agreed with the report. The 1998 letter accompanying the additional report requested by the district judge and forwarded on August 18, 1998, upon which Phelps places additional reliance, was again simply a cover letter enclosing a report from the staff. In this letter, the associate warden did indicate her agreement with the staff report, which gets closer to the requirement, but is certainly less than a certificate by the director in charge of the facility that a release is justified.

The second flaw is that the enclosed report in each of those letters clearly indicated that Phelps had not recovered from the mental disease or defect and was not entitled to unconditional release. Rather, the staff report indicated that Phelps' mental condition was such that he could be conditionally released on a plan that was yet to be developed. Thus, there is no basis for asserting that the August 31,

1998 hearing and the conditional release on January 4, 1999, could result in an unconditional release.[8]

■ It is apparent that what actually happened was a more informal procedure that did not comply with § 4243(f). The staff psychiatrist believed that Phelps could be conditionally released, the associate warden ultimately agreed and made this known to the court, to the U.S. Attorney, and to counsel for Phelps. The Government did not object and Phelps' counsel did not contend that the release should be unconditional. Thus, the district court reasonably believed that all of the pertinent parties agreed that there should be some sort of conditional release worked out. The report provided that the institution's case worker desired to work this out with the probation officer, who would be responsible for monitoring the conditions of release.[9]

■ The major purpose of § 4243 is to assure that a person who has been found not guilty only by reason of insanity is retained in a mental hospital until he is cured, and it is therefore safe to release him into society; or if he is not cured, but treatable, it is safe to release him into society under certain conditions. There are two aspects to be addressed; the first is his mental condition and the second is the safety of the general public. The district court has the ultimate responsibility as to both.

8. Under the general provisions of 18 U.S.C. § 4247(h) counsel for the person hospitalized may at any time during such person's hospitalization file with the court a motion for a hearing to determine whether the person should be discharged from the facility, irrespective of whether the director has filed a certificate. However, there is no indication that such a motion was ever filed by counsel, and thus the August 31, 1998 hearing was based on the letter and enclosure from Dr. Sally Johnson, the associate warden.

9. 18 U.S.C. § 3603(8)(A) provides that one of the duties of a probation officer is "when directed by the court, and to the degree required by the regimen of care or treatment ordered by the court as a condition of release, keep informed as to the conduct and provide supervision of a person conditionally released under the provisions of § 4243 or § 4246 of this title and report such persons' conduct and condition to the court ordering the release and to the attorney general or his designee."

The Supreme Court in *Foucha v. Louisiana*, 504 U.S. 71, 77, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), held that an insanity acquitee may be held only as long as he is both mentally ill and dangerous. It is essential in order to continue retention that the person is still mentally ill; it is not enough that he is considered a danger to the community. This principle is recognized in the statute. Section 4243(d), describing the burden of proof that is upon the person seeking release, states that the person "has the burden of proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." (Emphasis added.) In the case before us, the psychiatrist and psychologist at the institution believed that Phelps was still mentally ill, but that under certain conditions he would no longer create a substantial risk of bodily injury to another person or serious damage to property of another.

This is an extremely serious responsibility placed on both the hospital institution and the court. A person, who has been charged with violent crimes and acquitted only by reason of insanity, has not denied that he committed the acts charged, but only that the commission of these acts are a result of his insanity. The responsibility of the institution is placed specifically by § 4243(f) on the director of the institution to assure that the mental condition of the person is such that he can safely be released. This places the full imprimatur of the institution behind that decision. It avoids the fractionalizing of that responsibility among the staff of the institution. There are two important certifications for the director to make. The first is a certification that the person has sufficiently recovered mentally to be released at all. The second is, if the person can be released but only on certain conditions, a certification that the conditions are appropriate.

The court bears a vital responsibility as to both. The decision of the director can be reviewed, either at the instigation of the Government or on the court's own motion. The court can determine that release is not justified, as the court did in Phelps' case in 1989. Furthermore, if the director certifies that a conditional release is justified from a medical standpoint, the court has the responsibility of determining whether the conditions are adequate to ensure the safety of the general public. It is significant that the conditions of release ultimately developed are to be certified by the director as well. This assures that the institution is fully aware of the conditions and supports them. If adequate conditions cannot be or are not developed to the satisfaction of the court to ensure public safety, then the court has the responsibility to deny the release.

In this case a § 4243(f) procedure was not properly instituted because there was no certification by the director that Phelps' mental status justified conditional release. Furthermore, even had the § 4243(f) procedure been properly instituted, the ultimate conditions of release were not certified to be appropriate by the director.

The seriousness of releasing a person who has been acquitted of a felony only by reason of insanity justifies close adherence to the requirements of the statute. This was not done in this case. Thus, the order granting conditional release must be reversed. This does not prevent appropriate release proceedings being commenced under § 4243(f), upon remand.

**B. Conditions of Release.**

Because it appears to be likely that release proceedings will again be instituted under § 4243(f), we reach the other issues

raised by Phelps concerning the conditions that may be imposed by the court.

■ Phelps maintains that the only condition that can be placed upon his release under § 4243(f) is compliance with a "prescribed regimen of medical, psychiatric or psychological care or treatment," because that is the only release condition expressly mentioned in § 4243(f). Additionally, Phelps observes that § 4243(g)[10], which deals with the revocation of a § 4243(f) conditional discharge, lists only failure to comply with the required mental health regimen as a basis for revocation of a conditional release. In Phelps' view, the fact that § 4243(f) and (g) do not mention other conditions such as supervisory or public safety conditions, is evidence Congress intended that the only condition a district court may include in a conditional release is one requiring adherence to a prescribed mental health regimen.[11]

It is important to note that the discharge proceeding set forth in § 4243(f) is instituted by the director of the facility in which the acquitted person is hospitalized. It is natural that the expertise of the director and his staff is concerned with the medical, psychiatric, and psychological care of the person to be released and what the regimen should be in order to assure that his mental condition will be stabilized. However, the district court bears the ultimate responsibility of determining whether the conditions of release adequately provide for the safety of the general public. The district court in this case had the vital responsibility of assuring that a mentally ill person, who was charged with violent acts of placing pipe bombs in five locations and acquitted only by reason of insanity, because of his psychotic delusions about conspiracies of persons and organizations, was safe to release into society. The medical aspects have been addressed by the institution, which is within the realm of its expertise, but this is not the sole concern that must be addressed in order to ensure the safety of the general public. In fact, the institution report itself indicated that a plan was to be worked out with the probation officer including an appropriate place to live, and obviously other factors. The letter of the associate warden and the psychiatric report both acknowledged the importance of Phelps' respect for the authority of the court and the probation officer in addition to the medical release conditions they specified.

10. Section 4243(g) reads as follows:

Revocation of conditional discharge.—The director of a medical facility responsible for administering a regimen imposed on an acquitted person conditionally discharged under subsection (f) shall notify the Attorney General and the court having jurisdiction over the person of any failure of the person to comply with the regimen. Upon such notice, or upon other probable cause to believe that the person has failed to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, the person may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. The court shall, after a hearing, determine whether the person should be remanded to a suitable facility on the ground that, in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another.

11. Phelps does not contest the power of the district courts to assist in fashioning the prescribed mental health regimen on which release will be conditioned. See 18 U.S.C. § 4243(f) (stating that the prescribed regimen will be one "found by the court to be appropriate"); see also *United States v. Jain*, 174 F.3d 892, 898 (7th Cir.1999) (holding that, after considering the recommendations of the treating facility and mental health experts, "the court is entitled to spell out the prescribed regimen that it has found will be appropriate").

Section 4243(g), which provides for the revocation of conditional discharge, sets forth a procedure to be instituted by the director of the medical facility responsible for administering the medical, psychiatric and psychological regimen. This procedure is designed to terminate a person's release if he is no longer complying with that type of regimen. The court is to determine whether the concerns expressed by the director with regard to the failure to comply with this regimen justify termination of the person's release. Once again, however, the statute does not provide that this is the exclusive basis for terminating the release of a mentally ill person. It is the basis for terminating the release when the process is instituted by the director of the mental facility.

The letter of the associate warden and the psychiatric report both acknowledged the importance of Phelps' respect for the authority of the court and the probation officer in addition to the medical release conditions they specified. While it is true that the only condition expressly mentioned in the statute is compliance with a mental health treatment regimen, the text states that such compliance may be included "as an explicit condition of release." Section 4243(f)(2)(B) (Emphasis added.)

The Seventh Circuit dealt with a similar issue concerning the authorized conditions of release in *United States v. Jain*, 174 F.3d 892, 898 (7th Cir.1999). The court stated:

> Nothing in § 4243 purports to repeal other statutes that entitle district courts to issue orders ancillary to the disposition of cases before them. In fact, § 4243(f)(2)(B) expressly states that the prescribed regimen may be ordered as "an explicit condition of release," with the use of the indefinite article suggesting that other conditions may be imposed as well.... Given that "it is impossible to predict how long it will take

for any given individual to recover—or indeed whether he ever will recover," district courts generally are accorded great latitude when determining whether a mentally ill defendant is ready to be released and under what conditions.

*Id.* (quoting *Jones v. United States*, 463 U.S. 354, 367, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983)).

The court in Jain emphasized the role that § 4243(f) plays in the whole statute stating:

> The basic inquiry the court is making throughout § 4243 is whether release of the person would create a substantial risk of bodily injury to another person or serious damage to the property of another—briefly put, whether the public needs protection from the danger posed by the person's mental illness. See *United States v. Clark*, 893 F.2d 1277, 1282 (11th Cir.1990) (noting "the trial court's awesome responsibility to the public to ensure that a clinical patient's release is safe"); *United States v. Johnson*, 824 F.Supp. 198, 199 (M.D.Ala. 1993). In light of that overriding purpose, it would be inappropriate to adopt a crabbed reading of the content of the "prescribed regimen of medical, psychiatric, or psychological care or treatment" that may be imposed as a condition of release.

*Id.* at 898. We agree with the reasoning and conclusion of our sister circuit.

It is clear from the statute that any additional conditions imposed must be related to the mental illness. Under § 4243(d) the risk involved that is dealt with in the additional public safety conditions must be "due to a present mental disease or defect." The close and careful monitoring of Phelps' activities was reasonable in light of his mental illness and delusions and the charges of violence for which he had been acquitted only by reason of insanity.

The district court has the ultimate responsibility to determine whether this mentally ill person is safe to release into the general public. His mental condition and the ability to control it is certainly one aspect to be considered by the court. However, the court has the discretion to deny the release entirely when the only conditions are those relating to his medical, psychiatric, and psychological status. It is a reasonable interpretation of the statute, and makes common sense, that if the district court can deny the release entirely, then the district court can also authorize other conditions to assure the safety of the general public and grant the release.

 In this case, the institution, the probation officer, and the court were seeking to work out a program whereby the person could be released into the general public and still assure safety. The conditions imposed by the court in its January 4, 1999 order and its January 20, 2001 order modifying the conditions were all legitimately related to assuring the public safety in releasing Phelps in light of his mental illness and the charges of violent conduct of which he had been acquitted only by reason of insanity. They should, of course, have been certified by the director of the hospital institution, as we have indicated.

## III.

### Conclusion.

Because the issuance of the release order did not comply with § 4243(f) release, that order is vacated and remanded to the court to enter an order that Phelps be rehospitalized pursuant to this opinion.[12] Further release proceedings are not barred by this decision, but may be appro-

priately instituted in compliance with § 4243(f). The additional conditions imposed by the district judge to ensure public safety are not foreclosed by the statute, provided they are also certified by the director of the hospital institution to which Phelps is returned.

**VACATED AND REMANDED.**

### Appendix A

18 U.S.C. § 4243(f):

When the *director* of the facility in which an acquitted person is hospitalized pursuant to subsection (e) determines that the person has recovered from his mental disease or defect to such an extent that his release or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment, would no longer create a substantial risk of bodily injury to another person or serious damage to the property of another, he shall promptly *file a certificate* to that effect with the clerk of court that ordered the commitment. The clerk shall send a copy of the certificate to the person's counsel and to the attorney for the Government. The court shall order the discharge of the acquitted person or, on the motion of the attorney for the Government or on its own motion, shall hold a hearing, conducted pursuant to the provisions of 4247(d), to determine whether he should be released. If, after the hearing, the court finds by the standard specified in subsection (d) that the person has recovered from his mental disease or defect to such an extent that—

(1) his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall order that he be immediately discharged; or

(2) his conditional release under a prescribed regimen of medical, psychiatric,

---

**12.** There is an indication in the record and the docket sheet of the district court that

Phelps may have been rehospitalized for violations of the conditions of release.

or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall—

(A) order that he be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, that has been certified to the court as appropriate by the director of the facility in which he is committed, and that has been found by the court to be appropriate; and

(B) order, as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment.

The court at any time may, after a hearing employing the same criteria, modify or eliminate the regimen of medical, psychiatric, or psychological care or treatment.