[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12470

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 21, 2010
JOHN LEY
CLERK

D. C. Docket No. 04-80102-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL CRAPE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 21, 2010)

Before DUBINA, Chief Judge, KRAVITCH, Circuit Judge, and EDENFIELD,[*]
District Judge.

KRAVITCH, Circuit Judge:

_____

[*] Honorable B. Avant Edenfield, United States District Judge for the Southern District of
Georgia, sitting by designation.

Michael Crape was committed to a mental-health facility after being found not guilty by reason of insanity on charges of mailing threatening letters to the President and Vice-President of the United States. Five months later, the district court ordered Crape's release pursuant to 18 U.S.C. § 4243(f), which provides for the conditional discharge of insanity acquittees under a prescribed regimen of medical treatment. As a condition of that release, the court forbade Crape from sending any more threatening letters. When Crape later mailed a letter threatening to kill several teenagers, the court revoked his conditional discharge pursuant to § 4243(g).

We must decide whether requiring Crape to refrain from writing threatening letters and revoking his discharge for the failure to comply with that condition exceeded the district court's authority under § 4243. We hold that it did.

I

Michael Crape is a mentally ill man with an extensive history of letter-writing. In 2002, Crape mailed two letters threatening the lives of President Bush and Vice-President Cheney, in violation of 18 U.S.C. § 871(a). Following Crape's indictment for these crimes, the Government agreed to the entry of a stipulated verdict of not guilty by reason of insanity. *See id*. §§ 17, 4242(b)(3). The court accepted the stipulation and, after determining that Crape posed a danger to others,

2

ordered his commitment to a suitable treatment facility until "his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment, would not create a substantial risk of bodily injury to another person or serious damage to property of another." *Id.* § 4243(e)(2).

Crape's mental condition improved during the course of his hospitalization, and the director of the facility to which he had been committed eventually recommended his conditional discharge pursuant to 18 U.S.C. § 4243(f).[1] The district court accepted the director's recommendation and ordered Crape's release on the condition that he continue to obey his doctors and take his medication. But the court also imposed another condition: "Mr. Crape shall not mail, distribute, or otherwise transmit any threatening communications. Revocation of conditional

---

[1] The relevant portions of the statute read:

If . . . the court finds . . . that the person has recovered from his mental disease or defect to such an extent that—
 . . .
   (2) his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall—
     (A) order that he be conditionally discharged . . . and
     (B) order, as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment.

18 U.S.C. § 4243(f).

release is mandatory for mailing, distributing, or otherwise transmitting any threatening communications."

For unknown reasons, Crape's condition deteriorated after his release, and he was arrested in early 2006 for sending the Palm Beach County Sheriff's Office a letter demanding "[$]7.3 million for the return of six 15-year-old white females" and threatening to "chop off their heads and mail them to you."  At a status conference held in Crape's absence, the district court granted the Government's motion to revoke his conditional discharge.  The court made no findings regarding Crape's compliance with his prescribed regimen of treatment.

Crape appealed, and we vacated the district court's order.  *United States v. Crape*, 314 Fed. Appx. 199 (11th Cir. 2008) (unpublished).  We held the district court had erred because Crape had a statutory right to "'be taken . . . before the court'" and "'afforded an opportunity to testify, to present evidence, to subpoena witnesses, and to confront and cross-examine witnesses who appear at the hearing.'"  *Id.* at 200 (quoting 18 U.S.C. §§ 4243(g), 4247(d)).  We remanded with instructions that the court conduct a proper hearing in Crape's presence to "determine whether, in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, Crape's continued release

4

created a substantial risk of bodily injury to another person or serious damage to property of another." *Id.* at 201 (citing 18 U.S.C. § 4243(g)).

At Crape's subsequent revocation hearing, his attorney argued that the court could not revoke the conditional discharge without finding that Crape had failed to comply with his prescribed regimen of psychiatric treatment. The court, after admitting uncertainty as to "whether [Crape had] failed to comply with what [his doctors] told him to do," rejected that argument: "I have a hard time thinking that the only way his conditional release can be revoked is if he didn't follow the doctors' instructions. It seems to me that overlooks the possibility that the instructions themselves weren't adequate or that they just—the medicines just didn't work." After finding that Crape's "continued release would create a substantial risk of bodily injury to another person or serious damage to the property of another," 18 U.S.C. § 4243(g), the court revoked his discharge on the ground that he had mailed a threatening communication.

## II

The question before us is whether the statute governing the revocation of conditional discharge allowed the district court to revoke Crape's discharge without finding that he had "fail[ed] to comply with [his] prescribed regimen of medical, psychiatric, or psychological care or treatment." 18 U.S.C. § 4243(g).

5

This question comes to us in two guises. First, Crape argues that we decided the issue in his previous appeal and that the district court failed to comply with our mandate. Second, regardless of our previous mandate, Crape argues that the statute precluded revocation in the absence of a finding that he had deviated from his treatment plan.

A. *The Mandate*

With respect to Crape's first argument, we review the district court's compliance with our mandate in a previous appeal *de novo*. *United States v. Amedeo*, 487 F.3d 823, 829 (11th Cir. 2007).[2] "The law of our circuit concerning the obligations of a district court to follow our mandates is settled." *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1511 (11th Cir. 1987). With exceptions that are not relevant here, our rule is that "an appellate decision is binding in all subsequent proceedings in the same case." *Id.* at 1510.[3] Nevertheless, our mandates "do[] not bar consideration of matters that could have been, but were not, resolved in earlier proceedings." *Luckey v. Miller*, 929 F.2d 618, 621 (11th Cir.

---

[2] The Government urges us to review only for plain error on the ground that Crape's attorney failed to raise the mandate issue below. *See United States v. Orisnord*, 483 F.3d 1169, 1176 n.3 (11th Cir. 2007) ("[T]he standard of review for . . . unpreserved issues is plain error."). The outcome of this appeal, however, does not turn on our standard of review, and we need not decide whether Crape adequately preserved his mandate argument in the district court.

[3] *Cf. Litman*, 825 F.2d at 1511 ("The mandate rule is simply an application of the law of the case doctrine to a specific set of facts.").

1991).  On this score, "[a] mandate may be vague or precise" depending on the issues raised on appeal, and "[d]etermining the scope of a mandate can present problems [of] interpretation."  *Litman*, 825 F.2d at 1511.  In determining the scope of our previous mandate, we must therefore determine the scope of the issues considered in that appeal.

In Crape's first appeal, he unequivocally argued that § 4243(g) required the district court to find he had departed from his prescribed regimen of treatment.  But although our decision suggested his point had been "concede[d]," 314 Fed. Appx. at 200, the Government's brief had not addressed the issue at all.[4]  Moreover, our decision framed the issue as whether "the district court [had] failed to apply the proper legal standard under § 4243(g)," *id.* at 200, and Crape had correctly argued that the standard applied by the district court was unclear.  For example, the court had not made an explicit finding that Crape's "continued release would create a substantial risk of bodily injury to another person or serious damage to property of another."  18 U.S.C. § 4243(g).  After noting that we "ha[d] not had occasion to address the conditional release standard of § 4243(g),"[5] we instructed the district court merely by repeating the statute's operative language.  314 Fed. Appx. at

---

[4] We did not hear oral argument in that appeal.  314 Fed. Appx. at 201 n.1.

[5] In fact, the cases we cited from other circuits supported the Government's position, not Crape's.  *See* 314 Fed. Appx. at 200–01 (citing *United States v. Phelps*, 283 F.3d 1176, 1186 (9th Cir. 2002); *United States v. Jain*, 174 F.3d 892, 899 (7th Cir. 1999)).

7

200–01. Consequently, if the statute allowed the district court to revoke Crape's conditional discharge without considering his compliance with his medical regimen, then so did our mandate in his previous appeal.

B. *The Statute*

1. *Plain Meaning*

We review the district court's interpretation of § 4243(g) *de novo*. *See United States v. Johnson*, 399 F.3d 1297, 1298 (11th Cir. 2005). We begin our analysis of the statute by reading "the language employed by Congress" and assuming "that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 194 (1985). In other words, if "the statutory text is plain and unambiguous[,] . . . we must apply the statute according to its terms." *Carcieri v. Salazar*, 129 S. Ct. 1058, 1064 (2009).

Section 4243(g), titled "Revocation of Conditional Discharge," requires the district court with jurisdiction over a conditionally discharged insanity acquittee, upon

> probable cause to believe that the person has failed to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, . . . [to] determine whether the person should be remanded to a suitable facility on the ground that, in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, his continued release would create a

8

substantial risk of bodily injury to another person or serious damage to property of another.

18 U.S.C. § 4243(g). The plain and natural reading of this statute is that it empowers the court to revoke an acquittee's conditional discharge only if he has failed to comply with his regimen of treatment. To the extent we "must presume that a legislature says in a statute what it means and means in a statute what it says," *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992), Congress's intent to restrict the grounds for revocation to noncompliance with a prescribed regimen of treatment is evident in two respects. First, it is the acquittee's noncompliance that triggers the statute's very operation: the court's obligation to assess the acquittee's dangerousness only arises upon "probable cause to believe that the person has failed to comply with the prescribed regimen of . . . treatment." 18 U.S.C. § 4243(g). More important is that the statute directs the court to determine whether an acquittee "should be remanded to a suitable facility on the ground that, in light of his failure to comply *with the prescribed regimen of . . . treatment,*" he poses a danger to other persons or their property. *Id.* (emphasis added). Standing alone, the wording of this provision makes the acquittee's failure to follow his doctors' orders a prerequisite to the revocation of his release.

## 2. *Subsection (f)*

The Government, however, urges us not to read § 4243(g) "so literally."  It argues that preventing district courts from revoking an acquittee's conditional discharge unless he has failed to comply with his medical regimen would undermine the statute's primary purpose—to protect the public.  In this vein, the Government relies on § 4243(f) for the proposition that the district court may impose "ancillary" conditions on an acquittee's release.  On the basis of that assumption, the Government argues that a literal interpretation of § 4243(g) would allow acquittees to violate these additional conditions with impunity.

Although the question of the court's authority under § 4243(f) has not, strictly speaking, been presented to us on appeal,[6] "statutory language cannot be construed in a vacuum.  It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).  We therefore turn to subsection (f) to determine whether it allowed the district court to impose ancillary conditions on Crape's discharge.

---

[6] Crape did not challenge the threatening-communication condition when it was imposed or in his first appeal, so the question whether the district court had the authority to impose the restriction in the first place is technically not before us. *See United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) (refusing to consider arguments in a defendant's second appeal that he could have raised in his first).  Nevertheless, we find answering this question necessary to the resolution of the § 4243(g) issue.

Section 4243(f) provides that when the district court finds an acquittee "has recovered from his mental disease or defect to such an extent that . . . his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer" pose a danger to other persons or their property, it "shall order, as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment."  18 U.S.C. § 4243(f).  The Government relies heavily on the phrase "*an explicit condition of release*" (emphasis added) to support its contention that the acquittee's compliance with a prescribed regimen of treatment is not the *only* permissible condition of release.  To paraphrase the Government's argument: the compliance condition may be mandatory, but it is not exclusive.

Three courts of appeals have agreed with the Government.[7]  In *United States v. Jain*, 174 F.3d 892, 898 (7th Cir. 1999), the Seventh Circuit held that "a district court does not overstep its authority by establishing conditions of release relating to an insanity acquittee's dangerousness that are not specifically included in the 'prescribed regimen.'"  After citing *Jain* with approval, the Ninth Circuit joined the Seventh in *United States v. Phelps*, 283 F.3d 1176, 1184–87 (9th Cir. 2002)

---

[7] A district court in the Third Circuit implicitly reached the same conclusion in *United States v. Evans*, 287 F. Supp. 2d 590, 593 (E.D. Pa. 2003) ("[T]he court finds that Mr. Evans has violated the specific terms of his conditional release by attempting to contact Ms. Cohan.").

11

(*dicta*).  And in an opinion interpreting the materially identical language of 18

U.S.C. § 4246(e), which governs the conditional discharge of hospitalized

convicts,[8] the Eighth Circuit adopted the reasoning of *Jain* and *Phelps*.  *United*

*States v. Franklin*, 435 F.3d 885, 889–90 (8th Cir. 2006).

Having considered the arguments in favor of a more permissive reading of

§ 4243(f), we respectfully disagree with our sister circuits.  First, although the

Seventh Circuit referred in passing to "other statutes that entitle district courts to

issue orders ancillary to the disposition of cases before them," *Jain*, 174 F.3d at

898, it did not actually identify any other statutes that would expand the courts'

authority under § 4243(f).  The Eighth Circuit cited the All Writs Act[9] as a

possibility, *Franklin*, 435 F.3d at 890, but we question the Act's relevance in this

context, and we do not believe its general terms expand the courts' limited power

under the specific conditional-discharge statute.  "Where a statute specifically

addresses the particular issue at hand, it is that authority, and not the All Writs Act,

that is controlling.  Although that Act empowers federal courts to fashion

extraordinary remedies when the need arises, it does not authorize them to issue ad

_____

[8] *Cf. IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("[T]he normal rule of statutory interpretation [is] that identical words used in different parts of the same statute are generally presumed to have the same meaning.").

[9] "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1561(a).

hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985); *see also Morales v. TWA*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general . . . .").

We are also unpersuaded that the use of the word *an* in § 4243(f) implies a wide-ranging authority to impose additional, unspecified conditions on an acquittee's discharge. On the contrary, the use of an indefinite article avoids the ungainly construction that would result from the use of a definite article in its place (*e.g.*, "the court shall order, as *the* explicit condition of release . . ."). Aside from its general awkwardness, the use of a definite article would inaptly suggest the possibility of *inexplicit* conditions on an insanity acquittee's discharge.

Finally, a reading of subsection (f) that allowed district courts to impose additional conditions on an acquittee's discharge would have no natural limits. The Seventh and Ninth Circuits have concluded that any additional conditions must be "related to the [acquittee's] mental illness," *e.g.*, *Jain*, 174 F.3d at 898, but there is no discernible textual basis for that limitation.

13

3. *Absurd Results*

Without a textual hook on which to hang their "relatedness" requirement, the Seventh and Ninth circuits have looked to § 4243's "overriding purpose" for justification:

> The basic inquiry the court is making throughout § 4243 is whether release of the person would create a substantial risk of bodily injury to another person or serious damage to the property of another—briefly put, whether the public needs protection from the danger posed by the person's mental illness.  In light of that overriding purpose, it would be inappropriate to adopt a crabbed reading of the content of the "prescribed regimen of medical, psychiatric, or psychological care or treatment" that may be imposed as a condition of release.

*Jain*, 174 F.3d at 898; *see also Phelps*, 283 F.3d at 1186 (quoting *Jain*).  The Government here frames the same argument more boldly, contending that a literal reading of the statute would produce "absurd" results.

As an initial matter, we note that "[w]e are not at liberty to rewrite the statute to reflect a meaning we deem more desirable."  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008).  And "we will not attribute words to Congress that it has not written."  *Atl. Sounding Co. v. Townsend*, 129 S. Ct. 2561, 2575 (2009).  It is true that we may depart from the text of a statute when its plain meaning produces "absurd or futile results . . . plainly at variance with the policy of the legislation as a whole."  *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940) (quotation marks omitted).  But we bear in mind that "the Court rarely invokes

14

such a test to override unambiguous legislation." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 459 (2002); *see also Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1902 n.6 (2009) ("It is not our role to conform an unambiguous statute to what we think Congress probably intended." (quotation marks omitted)).

The Government argues that refusing to allow district courts to impose and enforce ancillary conditions of discharge under § 4243 would have two absurd consequences. First, it argues that a literal reading of the statute would "severely truncate the district court's ability to carry out the goals of § 4243" by limiting the court's power to "fashion terms and conditions that are related to the defendant's mental illness and reasonably necessary to ensure the public's safety." Second, and as a result, the Government argues that a literal reading would divest the court of its "awesome responsibility . . . to ensure that a clinical patient's release is safe." *United States v. Clark*, 893 F.2d 1277, 1282 (11th Cir. 1990).

With respect to the Government's first argument, we fail to see the absurdity in restricting the court's authority under § 4243(g) to that which is conferred by the provision's text. "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989) (quotation marks and brackets omitted). And

the Government has produced no evidence that Congress intended anything other than to ensure that a conditionally discharged acquittee complies with the regimen of treatment prescribed by his doctors.

The Government's failure in this regard may be due to the fact that the legislative history actually supports a literal reading of the statute. Section 4243 is part of the Insanity Defense Reform Act of 1984, which Congress enacted as part of the Comprehensive Crime Control Act of 1984. *See* Pub. L. No. 98-473, tit. II, ch. IV, 98 Stat. 1976, 2057. In a lengthy and detailed report accompanying that larger piece of legislation, the Senate Committee on the Judiciary explained that § 4243(g) "provides a procedure for dealing with the situation in which the released person fails to comply with the prescribed regimen of medical care or treatment." S. Rep. No. 98-255, at 244 (1983). Similarly, the Committee characterized subsection (f) as requiring the court to order that an acquittee "be discharged under an appropriate prescribed regimen of medical care or treatment on the explicit condition that he comply with the prescribed regimen." *Id.* Nothing in the Committee's report supports the conclusion that Congress meant to give district courts the authority to revoke a conditional discharge solely because an acquittee is dangerous.

In effect, the Government asks us to treat conditional discharge under § 4243 as an analogue of supervised release under 18 U.S.C. § 3583. The latter provision empowers sentencing courts to affix a term of supervised release to any term of imprisonment. In some respects, the statute uses language nearly identical to that of § 4243(f): "The court shall order, as an explicit condition of supervised release, that the defendant not commit another . . . crime during the term of supervision and that the defendant not unlawfully possess a controlled substance." 18 U.S.C. § 3583(d). But § 3583 also provides that "[t]he court *may* order, as a further condition of supervised release . . . any other condition it considers to be appropriate." *Id.* (emphasis added). The only limits on the court's broad discretion in this area are that additional conditions must be "reasonably related" to the sentencing factors listed at 18 U.S.C. § 3553(a), "reasonably necessary" to effect the "purposes" of § 3553(a), and "consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* § 3583(d)(1)–(3).

The distinctions between supervised release under § 3583 and conditional discharge under § 4243 are thus readily apparent. The most obvious difference is that § 3583 explicitly allows the district court to impose "any other condition it considers to be appropriate." In addition, § 3583 allows the district court to revoke a term of supervised release whenever it "finds by a preponderance of the evidence

17

that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). This contrasts markedly with § 4243(g)'s more stringent requirement of a specific finding that an acquittee's "continued release would create a substantial risk of bodily injury to another person or serious damage to property of another."

Moreover, the supervised-release statute at § 3583, like the conditional-discharge statute at § 4243, was enacted as part of the Comprehensive Crime Control Act. *See* Sentencing Reform Act of 1984, Pub. L. No. 98-473, tit. II, ch. II, 98 Stat. 1976, 1987. The fact that Congress gave district courts the explicit authority to impose ancillary conditions of release under § 3583 therefore strongly suggests that Congress did not intend to make the same authority implicit under § 4243. "'It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *United States v. Griffith*, 455 F.3d 1339, 1343 (11th Cir. 2006) (quoting *Duncan v. Walker*, 533 U.S. 167, 173 (2001)). Congress easily and explicitly could have allowed courts to impose ancillary conditions of release under § 4243 as well as § 3583. "That it did not speaks loudly and clearly." *Id.*[10]

---

[10] The same is true of the limitations the Government proposes for ancillary conditions of discharge under § 4243—that the conditions be "related to" the acquittee's mental illness and

We recognize that a literal interpretation of § 4243 prevents the district court from policing behavior unrelated to Crape's compliance with his medical regimen. And we appreciate the district court's concern that such an interpretation might "overlook[] the possibility that the instructions themselves weren't adequate or that . . . the medicines just didn't work." But if an acquittee's treatment plan proves inadequate, subsection (f) gives the district court the explicit authority, after a hearing, to "modify or eliminate the regimen." 18 U.S.C. § 4243(f). In addition, the Government usually has other means to protect the public from dangerous insanity acquittees. In this case, for example, the Government presumably could have pursued criminal charges against Crape for mailing the threatening letter to the Palm Beach County Sheriff's Office. *See* 18 U.S.C. § 876.

To the extent the district court's ability to modify an acquittee's treatment plan may only imperfectly secure the public safety, that is a problem the courts are not equipped to solve. Section 4243's underlying purpose may have been to protect the public, but the Supreme Court has refused to consider the "broad purposes" of a statute when "the language of a provision is sufficiently clear in its context and not at odds with the legislative history." *Rodriguez v. United States*,

---

"reasonably necessary" to effect the "purpose" of ensuring public safety. These proposed implicit limitations on the court's authority under § 4243(f) are almost identical to the textually explicit limitations on the court's power under § 3583(d)(1)–(3).

19

480 U.S. 522, 526 (1987) (quotation marks and alteration omitted). In *Rodriguez*, the Court summarily reversed the judgment below because the court of appeals had "impermissibly . . . relied on its understanding of the broad purposes of the [Comprehensive Crime Control Act]." *Id.* at 525. The Court explained that despite the Act's potential shortcomings,

> no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law.

*Id.* at 525–26. Here, the legislative history fully supports a literal reading of § 4243's text; under these circumstances, we have no occasion "to examine the additional considerations of 'policy' that may have influenced the lawmakers in their formulation of the statute." *Id.* at 526 (quotation marks and alteration omitted).

Furthermore, even if we assume Congress would have preferred that courts have the authority to enforce ancillary conditions of discharge under § 4243(g), "the fact that Congress might have acted with greater clarity or foresight does not give courts a *carte blanche* to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do." *United States v. Locke*, 471 U.S. 84, 95 (1985). We will not enlarge a statute "'so that what was omitted, presumably

20

by inadvertence, may be included within its scope.'  With a plain, nonabsurd meaning in view, we need not proceed in this way." *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926)).

III

We hold that a district court may not revoke an insanity acquittee's conditional discharge under § 4243(g) unless the acquittee has failed to comply with his prescribed regimen of medical, psychiatric, or psychological care or treatment.  In this case, the district court revoked Crape's conditional discharge without finding that he had failed to comply with his prescribed regimen of treatment.  We therefore vacate the district court's order of revocation and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

EDENFIELD, District Judge, specially concurring:

I concur in today's decision with some reluctance, simply because I find merit in the Seventh, Eighth, and Ninth circuits' interpretation of 18 U.S.C. § 4243(f). Those circuits have given effect to every word of the statute, namely that § 4243(f) directs the district court to "order, as *an* explicit condition of release, that [the conditionally discharged person] comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment." 18 U.S.C. § 4243(f)(2)(B) (emphasis added). The majority discounts the use of an indefinite article as the drafter's means to avoid "ungainly construction." I remain unpersuaded and believe that a textual interpretation of § 4243(f) would have us side with our sister circuits. However, looking beyond the statute to the legislative history, as the majority has done today, I agree that Congress intended for compliance with a regimen of treatment to be the only condition placed upon a conditionally discharged person, even if that intention was not clearly conveyed in § 4243(f).

While district courts in this circuit are now precluded from imposing supplemental conditions of release on persons discharged pursuant to § 4243(f), this change may not be as profound as it seems. This decision does not divest the courts of their statutory responsibility to ensure that a clinical patient's continued

22

release is safe.  Section 4243(g) empowers the courts to order the arrest of a conditionally discharged person upon "probable cause to believe that the [acquittee] has failed to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment."[1]  18 U.S.C. § 4243(g).  Moreover, § 4243(f), as the majority notes, permits courts to "modify . . . the regimen of . . . treatment."  18 U.S.C. § 4243(f).  District courts in this circuit must not hesitate to use this authority should an acquittee who may have otherwise complied with his prescribed regimen of treatment nonetheless become a threat to others.

---

[1] Certain malfeasances by persons discharged under § 4243(f) – for instance, the writing and mailing of letters threatening the murder of young girls – could indeed provide the probable cause needed to order a person arrested.