[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14834
Non-Argument Calendar

_____

D.C. Docket No. 6:17-cr-00175-CEM-EJK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WINTON GEORGE WILKS, IV,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 31, 2020)

Before JILL PRYOR, GRANT, and EDMONDSON, Circuit Judges.

PER CURIAM:

Winton Wilks, IV, appeals the district court's order -- pursuant to 18 U.S.C. § 4243(g) -- revoking Wilks's conditional release and remanding Wilks to the custody of the Bureau of Prisons ("BOP").  No reversible error has been shown; we affirm.

In 2017, a federal grand jury indicted Wilks for transmitting a threatening communication in violation of 18 U.S.C. § 875(c).  The charge was based on a text message Wilks sent to his ex-girlfriend's father.  Before trial, Wilks noticed his intent to rely on an insanity defense.  A psychiatrist evaluated Wilks and opined that Wilks was insane at the time of the offense and that Wilks was suffering from bipolar disorder with manic and psychotic features.

Wilks waived his right to a jury trial and proceeded to a bench trial on stipulated facts.  Based on the parties' stipulations, the district court found Wilks not guilty by reason of insanity.  The district court then ordered Wilks to undergo a dangerousness evaluation.

In April 2019, Wilks was admitted to the Mental Health Unit at the Federal Medical Center in Butner, North Carolina ("FMC Butner"). There, he was treated and evaluated by Dr. Lloyd, a forensic psychologist.  On 25 June 2019, Dr. Lloyd

2

sent a report to the parties in which she opined that Wilks was dangerous due to his mental illness.  A few days later, however, Dr. Lloyd notified the parties that Wilks's condition had improved substantially and that she intended to prepare an addendum to her report recommending Wilks as a candidate for conditional release.

On 26 August 2019, the district court ordered Wilks's conditional release. The conditions of release included, in pertinent part, that Wilks (1) have "NO CONTACT directly or indirectly with the victim . . . or the victim's family" and (2) "[p]articipate in a mental health treatment program . . . and follow the probation officer's instructions regarding the implementation of [that] directive."  During Wilks's first meeting with his probation officer, Wilks said he understood he was required to take his prescribed medication as a condition of his release and that he had a 30-day supply.

On 4 September 2019, a probation officer petitioned the district court for a warrant for Wilks's arrest.  The petition was based on allegations that Wilks had violated the terms of his conditional release.  The government later moved -- pursuant to 18 U.S.C. § 4243(g) -- for revocation of Wilks's conditional release based on Wilks's failure to abide by the medical, psychiatric, and psychological

3

treatment regimen prescribed to him by the BOP and on the substantial risk posed by Wilks's continued release.

The magistrate judge held an evidentiary hearing on the government's motion. Following the hearing, the magistrate judge issued a report and recommendation ("R&R") recommending that the district court revoke Wilks's conditional release. The magistrate judge found both that Wilks had failed to comply with his prescribed treatment regimen and that Wilks's continued release would create a substantial risk of bodily injury to others.

The district court overruled Wilks's objections and adopted the magistrate's R&R. The district court revoked Wilks's conditional release and ordered Wilks remanded to the custody of the BOP for further evaluation and treatment.

On appeal, Wilks challenges only the district court's finding that Wilks failed to abide by his prescribed mental health treatment regimen. Wilks contends that the district court's finding was merely speculative: the government presented no direct evidence that Wilks failed to take his medication.

We review for clear error the district court's factual findings. See United States v. Kennedy, 201 F.3d 1324, 1329 (11th Cir. 2000); see also United States v. Wattleton, 296 F.3d 1184, 1201 n.34 (11th Cir. 2002) (reviewing for clear error the district court's dangerousness findings under 18 U.S.C. § 4243).

4

According to our precedent, a district court -- under section 4243(g) -- may revoke even a possibly dangerous insanity-acquittee's conditional release only upon a finding that "the acquittee has failed to comply with his prescribed regimen of medical, psychiatric, or psychological care or treatment." United States v. Crape, 603 F.3d 1237, 1247 (11th Cir. 2010).[*]

The district court's finding that Wilks failed to comply with his prescribed treatment regimen while on conditional release is supported by evidence in the record. During the evidentiary hearing, Wilks's probation officer testified that he was called to Wilks's house at 3:15 a.m. on 28 August: two days after Wilks's conditional release. During that visit, Wilks told the probation officer that he was in love with his ex-girlfriend, was willing to wait for her for 50 years, and believed his ex-girlfriend's father was "testing" him. At the hearing, the probation officer also read aloud social media posts Wilks posted on 1 September containing song lyrics and language threatening his ex-girlfriend's father.

A police officer then testified about a disturbance involving Wilks on 2 September: about seven days after Wilks's release. When the officer had arrived, Wilks was sitting in front of a house; Wilks wore no shirt. The homeowner reported that Wilks (whom the homeowner did not know) had been beating on the

---

[*] Wilks raises no challenge to the district court's finding that Wilks's continued release posed a substantial risk of bodily injury to others; no question about that risk is before us on appeal.

5

owner's front door at 4:00 a.m. and talking about wanting to buy the house. The officer handcuffed Wilks and placed him in the back of a police car. Wilks began striking his head against a plexiglass window and yelling incoherently. Wilks also threatened to kill another officer who came on the scene. Based on Wilks's behavior, the officers detained Wilks pursuant to Florida's Baker Act, Fla. Stat. § 394.451.

Dr. Lloyd testified that, when Wilks first arrived at FMC Butner, he was uncooperative, illogical, and irrational. For the first few weeks, Wilks was often half-clothed or naked, acted in a threatening and aggressive manner, and often refused to take his medication. Wilks also tried repeatedly to get his family to contact the victim or the victim's daughter. Wilks's behavior improved significantly once he started taking consistently a prescribed mood stabilizer. While on his prescribed medication, Wilks was able to follow directions, no longer threatened people and stopped attempting to contact the victim or the victim's family.

Dr. Lloyd also testified that the officers' description of Wilks's behavior following his conditional release was consistent with behavior she had observed when Wilks was unmedicated. Furthermore, Dr. Lloyd also testified that it was unlikely that Wilks's medication dosage would have become insufficient to

manage Wilks's symptoms in that short time.  Dr. Lloyd testified that Wilks deteriorated very rapidly when unmedicated, which was consistent with how quickly he had deteriorated upon his conditional release.

Given the evidence at the pertinent hearing, the district court committed no clear error in finding that Wilks had stopped taking his medication, as prescribed, while on conditional release.  The district court was thus entitled to revoke Wilks's conditional release under section 4243(g).

AFFIRMED.