[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12791

_____

UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee,

*versus*

NAPOLEON HARRIS,
a.k.a. Pole,
a.k.a. Mr. 760,
CHARLIE L. GREEN,
a.k.a. Charlie Lee James Green,
a.k.a. Mr. 30N32,
JERRY W. GREEN, JR.,
a.k.a. Jerry Wayne Green,
a.k.a. Jerk,

2                    Opinion of the Court                    21-12791

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:12-cr-00205-SDM-SPF-3

_____

_____

No. 21-14006

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEONTE JAMAL MARTIN,
a.k.a. Tang,
a.k.a. Deonta Jamal Akerman Martin,
a.k.a. Deonta Martin,

Defendant-Appellant.

21-12791                Opinion of the Court                3

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:12-cr-00205-SDM-SPF-7

_____

_____

No. 21-14374

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

NATHANIEL HARRIS,
a.k.a. Popo,
a.k.a. Lil Brown,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:12-cr-00205-SDM-SPF-2

_____

Before ROSENBAUM, ABUDU, and TJOFLAT, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Napoleon Harris, Nathaniel Harris, Charlie Green, Jerry Green, and Deonte Martin[1] challenge their life sentences for violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), drug conspiracy, and related offenses. This appeal follows resentencing on remand from our opinion in *United States v. Green*, 981 F.3d 945 (11th Cir. 2020), where we vacated the appellants' convictions under 18 U.S.C. § 924(c).

The appellants were accused of operating a drug-trafficking enterprise in Bradenton, Florida. They were each convicted of participating in a RICO conspiracy and drug conspiracy. Some were also found guilty of racketeering activities such as murder, attempted murder, conspiracy to murder, and kidnapping. In *Green*, the appellants argued that their RICO conspiracy convictions did not qualify as predicate crimes of violence under § 924(c). *Id.* at 950. We agreed, vacated the appellants' convictions and sentences under that statute, and remanded to the District Court for resentencing. *Id.* We now address the appellants' remaining objections after resentencing.[2]

---

[1] Because most of the appellants share the last names "Harris" and "Green," we refer to them (but not Deonte Martin) by their first names below.

[2] This case returns to us in a somewhat unique posture because the District Judge who had conducted the original sentencing, Judge Elizabeth A.

First, the appellants argue that the District Court failed to comply with our mandate in *Green* by not conducting plenary resentencing on remand. Second, the appellants argue that they were improperly sentenced above the appropriate statutory maximum for their RICO conspiracies. Third, Charlie and Martin contend that they were sentenced above the appropriate statutory maximum for their drug conspiracies. Fourth, Napoleon, Nathaniel, and Charlie dispute the drug-quantity findings used to calculate their sentences. Fifth, Nathaniel argues that he should have received a downward departure because his criminal history was overrepresented. Sixth, Charlie challenges his categorization as a career offender for his drug-conspiracy conviction. And seventh, Nathaniel argues that the District Court abused its discretion and violated the Eighth Amendment at sentencing by failing to give adequate weight to characteristics such as his youth. We address each issue in turn.

## I.

First, the appellants argue that the District Court erred in conducting a limited resentencing. We review de novo whether

---

Kovachevich, retired while the case was on appeal in *Green*. The case was then reassigned to Judge Steven D. Merryday for resentencing. The Government now asserts that the appellants waived various arguments made before Judge Merryday by failing to raise them before Judge Kovachevich. However, we need not reach issues of waiver because, even assuming the appellants preserved every objection, we conclude that each of the appellants' arguments fails on the merits or otherwise involves harmless error.

the District Court complied with our mandate in *Green* on remand. *See United States v. Crape*, 603 F.3d 1237, 1241 (11th Cir. 2010).

With few exceptions, when an appellate court issues a specific mandate, a district court must follow it to the letter. *See id.* But when a mandate is more generalized, its scope naturally depends on "the scope of the issues considered [on] appeal." *Id.* Consequently, our mandates "do[] not bar consideration of matters that could have been, but were not, resolved in earlier proceedings." *Id.* (alteration in original) (quoting *Luckey v. Miller*, 929 F.2d 618, 621 (11th Cir. 1991)).

In particular, "when a criminal sentence is vacated, it becomes void in its entirety." *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996). In other words, the sentence is "wholly nullified and the slate wiped clean." *Id.* (quoting *United States v. Cochran*, 883 F.2d 1012, 1017 (11th Cir. 1989)). On remand, "the district court is free to reconstruct the sentence utilizing any of the sentence components." *Id.*

In *Green*, this Court vacated the appellants' § 924(c) convictions that were predicated on RICO conspiracies "and on that basis, their sentences on all counts." 981 F.3d at 961. In a footnote, we observed that Charlie and Napoleon had raised other issues with their sentences, but we characterized those issues as "moot" because of the vacatur. *Id.* at 961 n.10. We then "remand[ed] to the district court for further proceedings consistent with this opinion." *Id.* at 961.

On remand, the District Court decided it would simply "disentangle" the vacated convictions from the appellants' sentences rather than conduct plenary resentencing. The appellants were permitted to preserve their previous objections and to "make a record" of any new ones they wished to pursue. But the District Court otherwise adopted the previous Judge's rulings on each issue.

The appellants argue that the District Court should have conducted plenary resentencing because *Green* completely vacated their sentences. But nothing in our cases suggests that the District Court was *required* to conduct plenary resentencing—only that it was *permitted* to do so. *See, e.g., United States v. Martinez*, 606 F.3d 1303, 1304 (11th Cir. 2010) ("[W]e have often held that a general vacatur of a sentence by default allows for resentencing *de novo*.").

Of course, when resentencing the appellants, the District Court had to "consider the [appellants'] conduct and changes in the Federal Sentencing Guidelines since the original sentencing." *See Concepcion v. United States*, 597 U.S. 481, 486, 142 S. Ct. 2389, 2396 (2022). But those considerations are not relevant here insofar as the appellants challenge legal holdings and factual findings that were based purely on their pre-conviction conduct. Therefore, we hold that the District Court complied with our mandate in *Green* and was not required to conduct plenary resentencing.

## II.

Second, the appellants argue that they could not be sentenced to life imprisonment for RICO conspiracy under 18 U.S.C. § 1963(a). We review de novo whether the appellants' sentences

exceed the relevant statutory maximum terms of imprisonment. *See United States v. Candelario*, 240 F.3d 1300, 1306 (11th Cir. 2001).

Under RICO's penalty provisions, the maximum sentence for RICO crimes is generally twenty years. 18 U.S.C. § 1963(a). But the maximum increases to "life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." *Id.* In other words, RICO defendants can be sentenced to life imprisonment if a jury finds that they committed a predicate act that would itself subject them to a life sentence.

The appellants argue that, because their indictment did not cite 18 U.S.C. § 1963(a), they could not be sentenced under that statute's enhanced-penalty provision. They note that the Government had to allege and prove every fact that made them subject to a heightened statutory maximum. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000); *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151 (2013).

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362–63. In *Alleyne*, the Court held that the same was true of facts that increased statutory minimums. 570 U.S. at 103, 133 S. Ct. at 2155.

The Court rooted these holdings in the Sixth Amendment right to jury trial and the Due Process Clause. *See id.* at 104, 133 S. Ct. at 2156. The Court explained that treating penalty-enhancing

facts as elements of a crime "enables the defendant to predict the legally applicable penalty from the face of the indictment." *Id.* at 113–14, 133 S. Ct. at 2161. And it "preserves the historic role of the jury as an intermediary between the State and criminal defendants." *Id.*

Notably, the appellants' argument is not that the Government failed to specify and prove the necessary predicate acts. The indictment, in charging the appellants with violating 18 U.S.C. § 1962(d), included "Special Sentencing Allegations" detailing the appellants' racketeering activities. Several of these activities, including various murders and kidnappings, would have subjected the appellants to life sentences under Florida law. *See* Fla. Stat. §§ 777.04, 782.04, 787.01(2). And for each appellant, the jury found that the Government had proven at least one qualifying act beyond a reasonable doubt.

In other words, as required by *Apprendi* and *Alleyne*, each fact that enhanced the appellants' statutory maximum sentences was submitted to the jury and proven beyond a reasonable doubt. The indictment also complied with Federal Rule of Criminal Procedure 7(c)(1), which required that each count contain "the official or customary citation of the statute, rule, regulation or other provision of law that the defendant is alleged to have violated."

The appellants nevertheless insist that the indictment also had to cite the applicable *penalty* provisions, or else they could not be subject to any heightened statutory maximums contained therein. But there is no support for that assertion in either *Apprendi*

or *Alleyne*, both of which involved *facts* that needed to be submitted and proven as elements of a crime. *See Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2362–63; *Alleyne*, 570 U.S. at 103, 133 S. Ct. at 2155.

Taking a different tack, the appellants try to capitalize on the Government's failed argument in *Green* regarding "aggravated RICO conspiracy." *See* 981 F.3d at 952. There, the Government argued that § 1963(a) "adds an element to a typical § 1962(d) violation where the violation is based on a racketeering activity that carries a maximum penalty of life imprisonment." *Id*. The Government argued that this purportedly distinct crime qualified as a crime of violence under 18 U.S.C. § 924(c). *Id*.

For the sake of argument, we "[a]ssum[ed] without deciding that a distinct crime of aggravated RICO conspiracy exists." *Id*. Even still, the argument failed because "[n]either the indictment nor the jury instructions referenced § 1963(a)" and the appellants had received no notice that the Government was charging anything other than "conventional RICO conspiracy." *Id*. In other words, if the appellants had *actually* violated § 1963(a), then the Government should have said so in the indictment. *See id*.; Fed. R. Crim. P. 7(c).

In contrast, the appellants argue here that the Government had to cite § 1963(a) even when charging a *conventional* RICO conspiracy. But that argument takes the language in *Green* out of context. Here, we treat the appellants as having been convicted of violating § 1962(d)—not some separate crime. Because the appellants' indictment *did* reference § 1962(d), their sentences for violating *that* statute are entirely consistent with *Green*. Accordingly, we hold that

the District Court did not err by applying 18 U.S.C. § 1963's enhanced statutory maximum.

## III.

Third, Charlie and Martin argue that they could not be sentenced to life imprisonment for drug conspiracy under 21 U.S.C. §§ 841 and 846. Again, we review de novo whether the appellants' sentences exceed the relevant statutory maximums. *See Candelario*, 240 F.3d at 1306. We also review questions of statutory interpretation de novo. *United States v. Hansley*, 54 F.3d 709, 717 (11th Cir. 1995).

### A

Count Two of the appellants' indictment charged them with conspiring "to distribute and to possess with the intent to distribute . . . Schedule I . . . [and] Schedule II controlled substances" in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C), and 846. Before trial, the Government filed notices titled "Government's Information and Notice of Prior Convictions" for Charlie and Martin, among others. As required by 21 U.S.C. § 851, the informations described the previous convictions that the Government would rely on to seek enhanced sentences for each defendant.

Like the indictment, the informations cited 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C), and 846. Referencing Count Two of the indictment, the informations also specified that § 841(b)(1)(A) would subject the appellants to mandatory terms of life imprisonment, in addition to other penalties.

The problem, according to Charlie and Martin, is that they were each convicted under § 841(b)(1)(B), *not* § 841(b)(1)(A), which involved higher drug quantities and more severe penalties.[3] They argue, therefore, that the Government's § 851 informations provided inadequate notice of the sentencing ranges they actually faced. Relevant here, the enhanced penalty for recidivist offenders under § 841(b)(1)(B) is a sentence of ten years to life. But Charlie and Martin argue that, because of the Government's omission, they were subject only to § 841(b)(1)(B)'s *unenhanced* range of five to forty years.

Section 851's "procedural safeguards are mandatory and must be followed in all cases before a defendant's sentence may be enhanced under § 841." *United States v. DiFalco*, 837 F.3d 1207, 1214–15 (11th Cir. 2016). Indeed, "[t]he Government bears the burden of proving its strict compliance with" these requirements. *United States v. Ladson*, 643 F.3d 1335, 1344 (11th Cir. 2011). But "strict compliance does not require perfection in the notice." *DiFalco*, 837 F.3d at 1221.

As the Government notes, nothing in § 851's text required notice of the specific provision or penalty that would apply if the Government proved the appellants' prior convictions. Rather, it

---

[3] The jury ultimately found Charlie responsible for 100 kilograms or more of marijuana and Martin responsible for between 28 and 280 grams of cocaine base. Both findings correspond to drug quantities listed in § 841(b)(1)(B). *See* 21 U.S.C. § 841(b)(1)(B)(iii) & (vii).

provides only that the information must "stat[e] in writing the previous convictions to be relied upon." 21 U.S.C. § 851.

Section 851's notice requirement serves dual purposes: it "allow[s] the defendant to contest the accuracy of the information" and ensures the defendant "ha[s] ample time to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." *United States v. Williams*, 59 F.3d 1180, 1185 (11th Cir. 1995). These purposes were adequately served by the informations here, which were timely filed before trial, specified the prior convictions the Government would rely on, and took the additional step of warning the defendants of the most severe penalties they could face under § 841.

We cannot say that Charlie and Martin were unfairly surprised by a sentencing range more lenient than the one specified in the informations. Between the informations and the indictment, the appellants had adequate notice of the full range of penalties under § 841(b). Accordingly, we hold that the informations were not deficient for use in enhancing the appellants' sentences.

*B*

Martin makes another argument specifically regarding his life sentence under § 841: he says that his 2009 Florida conviction for selling cocaine within 1000 feet of a school is not a qualifying "prior conviction." Section 841(b) provides various sentence enhancements for defendants who violate the statute "after a prior

conviction for a serious drug felony or serious violent felony has become final."[4]

Martin argues that, because his 2009 conviction occurred during the charged § 841 conspiracy, it cannot qualify as a "prior conviction." The statute does not define the term, so Martin instead refers to United States Sentencing Guidelines § 4A1.2(a)(1), which defines "prior sentence" to include "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." Therefore, the argument follows, § 841(b) should similarly apply only to prior convictions for conduct separate from the charged crime.

This Court has already addressed and rejected similar arguments. *See United States v. Rice*, 43 F.3d 601, 607–08 (11th Cir. 1995); *Hansley*, 54 F.3d at 716–17. In *Rice*, a defendant with multiple prior convictions argued that they should be treated as a single conviction for § 841(b) purposes, partly because they arose from a "common scheme or plan." 43 F.3d at 607–08. Rejecting that argument, we noted that "a person who is involved in a conspiracy for which he may be punished remains ultimately responsible for the individual overt acts which are themselves criminal and punishable." *Id.*

---

[4] 21 U.S.C. § 841(b) originally referred simply to "felony drug offense[s]" before Congress implemented the "serious" language in the First Step Act of 2018 § 401. Pub. L. No. 115-391, 132 Stat. 5194, 5220–21. Section 401 applies "to any offense that was committed before the date of the enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." *Id.* Because the appellants' sentences were vacated, we apply the new language. Regardless, the amendment does not affect our analysis.

(citing *United States v. Garcia*, 32 F.3d 1017, 1019 & n.1 (7th Cir. 1994)).

Later, in *Hansley*, we specifically addressed "whether a previous conviction [wa]s sufficiently related to the *instant conspiracy* as not to be counted as a prior offense" under § 841(b). 54 F.3d at 717. We found our analysis in *Rice* persuasive, and we noted that *Rice* itself "relied on cases that address[ed] the precise issue that we face[d]." *Id.* In one such case, the Seventh Circuit upheld a § 841(b) enhancement because, after the defendant's prior conviction "became final, he continued to engage in [the] drug-related [conspiracy] for eighteen months." *Id.* (alterations in original) (quoting *Garcia*, 32 F.3d at 1020). Therefore, we held that a defendant's overt act could serve as a predicate conviction for a later conspiracy charge, at least where "he continued to engage in the conspiracy for a significant period of time." *Id.*

That's exactly what happened here. Martin's prior conviction occurred in 2009, and he continued in the charged conspiracy ending in 2014. For instance, the jury found Martin guilty of possessing with intent to distribute crack cocaine on or about August 8, 2013. So under our binding precedent, the District Court did not err in relying on the 2009 conviction as a "prior conviction." And Martin's reference to the Sentencing Guidelines is not persuasive. Accordingly, we hold that Martin's 2009 conviction was a "prior conviction" under § 841(b).

*C*

Charlie also argues that his 2005 Florida convictions for selling cocaine are not convictions for "serious drug felon[ies]" under § 841(b). In his initial brief, he referenced two cases that had been pending before this Court, *United States v. Jackson*, Case No. 21-13963, and *United States v. McCobb*, Case No. 20-12263. Since that initial brief, we decided *United States v. Jackson*, 55 F.4th 846 (11th Cir. 2022), *aff'd Brown v. United States*, 602 U.S. 101, 144 S. Ct. 1195 (2024). There, as here, the defendant posited a mismatch between federal and state drug laws. *See Jackson*, 55 F.4th at 850.

In *Jackson*, the defendant challenged his enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), on the basis that his prior convictions were not "serious drug offense[s]" as defined by federal law. *Id*. In relevant part, ACCA states that the term "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (*as defined in section 102 of the Controlled Substances Act* (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). In other words, *federal law* dictates whether something is a controlled substance for ACCA purposes.

Jackson had been convicted in 1998 and 2004 of violating Florida Statutes § 893.13, which prohibits various acts involving Florida's own list of controlled substances. *Jackson*, 55 F.4th at 850–51. At the time of those convictions, Florida's list included a

cocaine-related substance called ioflupane. *Id.* The same substance was included in the federal list until 2015, when the government exempted it. *Id.* Jackson was charged with violating ACCA in 2017, so he argued that, under the categorical approach, a § 893.13 conviction could no longer qualify as a serious drug offense. *Id.*

However, we rejected Jackson's argument because we held that "ACCA's 'serious drug offense' definition incorporates the version of the controlled-substances list in effect when the defendant was convicted of his *prior state drug offense.*" *Id.* at 849 (emphasis added). Jackson's prior convictions stemmed from 1998 and 2004, when the state and federal lists had been aligned, so he could not claim that Florida law prohibited a broader range of conduct.

Charlie's argument fails for the same reasons. His 2005 Florida convictions also stemmed from cocaine-related violations of § 893.13. And the relevant statute here, 21 U.S.C. § 802(57),[5] defines the term "serious drug felony" by reference to 18 U.S.C. § 924(e)(2), the statute we interpreted in *Jackson.*[6] Therefore, we hold that Charlie's 2005 conviction was a "serious drug felony" under § 841(b).

---

[5] A typographical error in the United States Code has resulted in two official references to 21 U.S.C. § 802(57). The second reference, found at 21 U.S.C.A. § 802(58) in West's United States Code Annotated, is the relevant provision here.

[6] The offender must have also "served a term of imprisonment of more than 12 months" and have been released from imprisonment "within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57).

## IV.

Fourth, Napoleon, Nathaniel, and Charlie also dispute the District Court's drug-quantity findings, which were used to calculate each appellant's base offense level for drug conspiracy under United States Sentencing Guidelines § 2D1.1. We review these findings for clear error. *United States v. Ifediba*, 46 F.4th 1225, 1237 (11th Cir. 2022).

The Government argues that any error in the District Court's drug-quantity findings was harmless because each appellant's total offense level would have remained unchanged regardless. *See United States v. Sanchez*, 30 F.4th 1063, 1076 (11th Cir. 2022). Indeed, the Government notes that the appellants' total offense levels would not change even if their drug conspiracies were completely omitted from the sentencing calculations.

Napoleon, Nathaniel, and Charlie were each sentenced partly under § 2A1.1, the Guideline for first-degree murder, based on special sentencing allegations that were incorporated into their convictions for RICO conspiracy.[7] The base offense level under §

---

[7] The Guideline for RICO violations, § 2E1.1, instructs courts to apply either the generic base offense level of 19 or "the offense level applicable to the underlying racketeering activity," whichever is greater. Nathaniel and Charlie were found guilty of first-degree murder. Napoleon was found guilty of kidnapping, but he was sentenced by cross-reference to § 2A1.1 because "the victim was killed under circumstances that would constitute murder under 18

2A1.1 is 43, which is also the highest total offense level possible under the Sentencing Guidelines. *See* U.S.S.G. ch. 5 pt. A comment. (n.2). And none of the appellants received any downward adjustments. Therefore, even if the District Court had sentenced the appellants exclusively for their RICO offenses, their total offense levels would have remained at 43. Accordingly, we agree that any purported error in calculating the appellants' drug quantities was harmless.[8]

## V.

Fifth, Nathaniel briefly argues that his presentence investigation report overrepresented his criminal history, citing Guidelines §§ 4A1.3, 4A1.1(b), and 4A1.2(d)(2)(A). These references alone do not present the clearest argument, but we note that Nathaniel requested and was denied a downward departure under § 4A1.3(b) at resentencing.

Section 4A1.3(b) permits district courts to depart downward "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant

---

U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States." U.S.S.G. § 2A4.1(c)(1).

[8] Nathaniel's initial brief also makes a short reference to his argument at resentencing challenging the increase to his offense level based on his leadership role in the offense. Again, any error would be harmless because the role-in-the-offense adjustment pertained only to the drug conspiracy, so his total offense level would have been calculated at 43 regardless.

will commit other crimes." U.S.S.G. § 4A1.3(b)(1). We have jurisdiction to review the District Court's denial of a downward departure only if the District Court thought it lacked the authority to depart. *See United States v. Moran*, 778 F.3d 942, 982 (11th Cir. 2015).

Here, Nathaniel argued that an assessment of five criminal history points for two convictions overrepresented his criminal history because the convictions arose from a single arrest, though he conceded that the separately charged convictions were "technically scored correctly" under the Guidelines. After Nathaniel's counsel clarified that he was requesting a departure, the District Court "agree[d] with the United States that the criminal history [wa]s probably not overstated," and it denied the request. Because the District Court did not rely on a perceived lack of authority, we lack jurisdiction to review its decision not to depart.

## VI.

Sixth, Charlie argues, citing our recent decision in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023), that the District Court erred in treating him as a career offender under Guidelines §§ 4B1.1 and 4B1.2 based on his drug-conspiracy conviction. We review the District Court's determination that Charlie qualified as a career offender de novo. *See United States v. Pridgeon*, 853 F.3d 1192, 1198 n.1 (11th Cir. 2017).

Under the Sentencing Guidelines, a defendant is subject to a "career offender" enhancement if, among other things, "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). A

"controlled substance offense" is defined, in relevant part, as an offense that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b)(1).

In *Dupree*, we held "that the text of § 4B1.2(b) unambiguously excludes inchoate crimes," including conspiracy. 57 F.4th at 1279–80. At the time, the Guidelines only referenced inchoate crimes in its commentary. *Id.* at 1273. Because that commentary cannot expand the meaning of an unambiguous guideline, we held that a defendant's drug-conspiracy conviction did not qualify as a controlled substance offense. *Id.* at 1273–80.[9] Therefore, Charlie argues, his own drug-conspiracy conviction could not serve as a predicate here.

Whatever the merits of Charlie's argument, we note that his total offense level would remain unchanged. Under § 4B1.1(b), Charlie received an offense level of 37 based on his designation as a career offender and the fact that the statutory maximum term for the drug conspiracy was life imprisonment. But that offense level was *less* than the total offense level of 43 he already received directly for his charged offenses, so the enhancement was not actually used.

_____

[9] After a November 2023 amendment, the definition of "controlled substance offense" now explicitly "include[s] the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense." *See* U.S.S.G. § 4B1.2(d). However, because both the relevant offense and sentencing occurred before the amendment, the new Guidelines do not affect our analysis. *See United States v. Maurya*, 25 F.4th 829, 836 (11th Cir. 2022).

*See* U.S.S.G. § 4B1.1(b). Consequently, we hold that any error in treating Charlie as a career offender did not affect his total offense level and was harmless. [10]

Charlie also argues that the career offender Guidelines range overrepresents his criminal history. At resentencing, he indicated that the two prior convictions that were used separately as predicates for his career-offender enhancement occurred when he was eighteen and nearly within a month of each other. The District Court concluded that the convictions were "properly scored separately" and overruled any objections as to the appropriate Guidelines calculation.

We assume without deciding that Charlie effectively requested a departure or variance. But again, we lack jurisdiction to review a court's decision not to depart unless the court believed it lacked authority to do so. *See Moran*, 778 F.3d at 982. Charlie has not made such a showing here. And when a district court is aware of its authority to grant a variance, we review the court's decision not to vary for an abuse of discretion. *See United States v. Cabezas-Montano*, 949 F.3d 567, 610 (11th Cir. 2020). We cannot say that the District Court abused its discretion here, where the defendant was

---

[10] Charlie makes another argument related to § 4B1.1(b) based on the alleged deficiency of the Government's § 851 notice. He argues that the maximum sentence he faced on Count Two was forty years, and therefore the District Court should have applied a career offender offense level of 34. *See* U.S.S.G. § 4B1.1(b). We reject Charlie's argument that he faced a maximum statutory term of forty years, *see supra* Part III, but in any event, the error would be harmless for the reasons already discussed here.

arrested, as an adult, on separate occasions for drug offenses as part of a continuing pattern of drug-dealing activity.

## VII.

Finally, Nathaniel argues that the District Court abused its discretion at sentencing by failing to give adequate weight to his traumatic upbringing, his status as a juvenile for part of the conspiracy, and his capacity for rehabilitation. We review the substantive reasonableness of Nathaniel's sentence for an abuse of discretion. *See United States v. Curtin*, 78 F.4th 1299, 1311 (11th Cir. 2023).

At sentencing, after correctly calculating the applicable Guidelines range, a district court must "consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49–50, 128 S. Ct. 586, 596 (2007).

Generally, "[t]he weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016). Still, "[a] district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc) (Birch, J., dissenting)). But we will vacate only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by

arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).

Here, at resentencing, Nathaniel submitted a sentencing memorandum arguing that his traumatic upbringing, his youth at the time of the offenses, and his actions since being incarcerated warranted a lesser sentence under the § 3553(a) factors. The memorandum described how Nathaniel suffered because of his mother's drug addiction, how he was encouraged to sell drugs and steal from as early as eight years old, and how he was exposed to violence and murder from a very young age. It also indicated that Nathaniel had demonstrated personal growth during his incarceration.

The District Court reviewed the memorandum, heard testimony, and acknowledged Nathaniel's "heartbreaking" and "revolting" upbringing, including the negative influences of his parents. However, the Court also considered the "strikingly violent and seemingly gratuitously violent" nature of Nathaniel's offenses, including multiple instances of murder and the use of deadly, high-caliber firearms to perpetuate the drug trade. And Nathaniel's childhood was not, in the Court's view, "greatly distinguishable from a lot of other defendants who found themselves in the same circumstance." Ultimately, the Court concluded that the seriousness of the offense and the interests of promoting respect for the law, protecting the public, affording adequate deterrence, and avoiding sentence disparities warranted a sentence of life

imprisonment. Under these circumstances, we cannot say that the District Court abused its discretion in imposing a sentence equal to the defendant's advisory Guidelines sentence—in this case, life.

Nathaniel also asserts that the Eighth Amendment requires special weight be given to the fact of his youth. At resentencing, he noted that he was only fourteen when he entered the conspiracy, was a juvenile for most of its duration, and was nineteen at the time of the murders charged in the indictment's special sentencing allegations.

Nathaniel cites a line of Supreme Court cases for the proposition that young people are constitutionally different from adults for sentencing purposes. *See, e.g.*, *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455 (2012); *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2010). Those cases rest on the principle that "juveniles have diminished culpability and greater prospects for reform," and these characteristics may render harsher sentences disproportionate. *Miller*, 576 U.S. at 471–73, 132 S. Ct. at 2464–66.

But those cases all involved defendants who committed their offenses when they were juveniles—that is, they were under the age of eighteen. *See id.* at 465, 132 S. Ct. at 2460 (involving two fourteen-year-olds); *Graham*, 560 U.S. at 53, 130 S. Ct. at 2018 (involving a sixteen-year-old). In fact, the Court in *Miller* interpreted the Eighth Amendment to "allow[] life-without-parole sentences for defendants who committed *homicide* when they were under 18,

but only so long as the sentence is not mandatory."[11] *Jones v. Mississippi*, 593 U.S. 98, 106, 141 S. Ct. 1307, 1314 (2021). In other words, "*Miller* mandated 'only that a sentencer follow a certain process—considering an offender's youth and attendant circumstances—before imposing' a life-without-parole sentence." *Id*. at 108, 142 S. Ct. at 1316 (quoting *Miller*, 576 U.S. at 483, 132 S. Ct. at 2471).

Nathaniel's argument also belies the fact that he was not a juvenile for much of the drug conspiracy charged in Count Two or for the murders charged in the special sentencing allegations. For non-juveniles facing a noncapital sentence, the appropriate question is simply whether "the sentence imposed is grossly disproportionate to the offense committed." *United States v. Bowers*, 811 F.3d 412, 432 (11th Cir. 2016) (quoting *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000)). And the Supreme Court has cautioned that "successful disproportionality challenges should be 'exceedingly rare.'" *United States v. Farley*, 607 F.3d 1294, 1337 (11th Cir. 2010) (quoting *Hutto v. Davis*, 454 U.S. 370, 372, 374, 102 S. Ct. 703, 704–05 (1982)); *see also Bowers*, 811 F.3d at 432 (noting that "this Court ha[d] never found a non-capital sentence of an adult to violate the Eight Amendment"). Generally, "a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Johnson*, 451 F.3d

---

[11] The Court has, however, held that the Constitution categorically prohibits all life-without-parole sentences for juvenile non-homicide offenders. *See Jones*, 593 U.S. at 106, 109, 141 S. Ct. at 1314. 1316. And "appropriate occasions for sentencing juveniles" to life without parole for even homicide offenses "will be uncommon." *Miller*, 567 U.S. at 479, 132 S. Ct. at 2469.

1239, 1243 (11th Cir. 2006) (quoting *United States v. Moriarty*, 429 F.3d 1012, 1024 (11th Cir. 2005)).

Here, the District Court did consider the fact of Nathaniel's "relative youth" when imposing his sentence, but ultimately deemed life imprisonment appropriate.[12] Because Nathaniel was not a juvenile for a sizeable portion of the drug conspiracy, we cannot say that his sentence is grossly disproportionate.[13] By the time of his arrest in 2011, Nathaniel had turned twenty years old, and he was nineteen when he committed the murders alleged in the special sentencing allegations. Regardless of whether those murders were committed directly in furtherance of the appellants' drug conspiracy, they are indicative of the lethality of that enterprise and its harm to the community. For these reasons, and given

---

[12] Nathaniel interprets the District Court's "relative youth" statement to suggest that the Court only considered Nathaniel's youth relative *to his co-defendants*, rather than to the general public. But that interpretation is refuted by the Court's very next sentence, in which it recalled an unrelated case "where a 19-year-old committed a for-hire execution by what he called a dome tap, . . . figuratively and quite literally blowing [the victim's] brains out for a price." In other words, the Court was drawing on past experiences to compare Nathaniel's youth with that of other dangerous offenders.

[13] Nathaniel's presentence investigation report attributed to him certain conduct, including drug-quantity calculations, that occurred while he was a juvenile. But only part of the relevant conduct occurred when Nathaniel was a juvenile, and we do not find any cases in our Court suggesting that such conduct could not be considered as part of sentencing for adult acts. *Cf. Wright v. United States*, 902 F.3d 868, 872 n.5 (8th Cir. 2018) (stating that "[t]he Eighth Amendment does not prohibit sentence enhancements based on crimes committed when an adult offender was a juvenile").

Nathaniel's extensive criminal history despite his relative youth, we hold that his life sentence on Count Two did not violate the Eighth Amendment.

**AFFIRMED.**